IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA,
WESTERN DIVISION

IN RE:                                                           BK 04-72563-CMS-13

**EARNEST LEE PALMER,**

    **DEBTOR.**

## MEMORANDUM OF DECISION

This matter was set for hearing on confirmation of the debtor's (Earnest Lee Palmer's) amended Chapter 13 plan (BK Doc. 40); and on his motion to set aside this court's order denying a motion to value his home, and to avoid creditor Ervin Palmer's (creditor is also referred to as Irving Palmer in some documents provided to the court) judgment lien on the property.[1] The matter was also set for hearing on Ervin Palmer's motion to dismiss the bankruptcy case. (BK Doc. 39) The court finds that debtor's amended plan is due to be **CONFIRMED** and the creditor's motion to dismiss **DENIED.** The court further finds that the debtor's motion to set aside the order denying his motion to value and avoid lien is to be **GRANTED** and his motion to avoid the judgment lien of the creditor is due to be **GRANTED** pursuant to 11 U.S.C. §522(f).

## FINDING OF FACTS

The court has deduced the following findings of fact from the Chapter 13 case file and from testimony at hearings which closed April 6, 2005. Testimony referred to various documents, including other court proceedings, but most were not offered as exhibits during the

---

[1] The debtor's previous motion to value and avoid lien had been denied after the debtor failed to appear at hearing.

1

trial.

A brief description of the relationship between the parties is as follows:

The debtor Earnest Lee Palmer is a minister at Cornerstone Full (Baptist or Gospel) Church in Tuscaloosa, Alabama. The debtor's sister, Freddie Mae Palmer, was killed in a vehicular accident in approximately December, 1991 or January, 1992. Freddie Mae Palmer was the mother of the objecting creditor, Ervin Palmer, the debtor's nephew.

Ophelia Palmer was the mother of debtor Earnest Lee Palmer and the late Freddie Mae Palmer, and grandmother of creditor Ervin Palmer. Ervin Palmer was living with his grandmother Ophelia Palmer in Birmingham when his mother was killed. In fact, creditor Ervin Palmer; and debtor Earnest Lee Palmer were reared in the same household. At some point following Freddie Mae Palmer's death, Ophelia Palmer's health declined and she moved to Tuscaloosa to live with Earnest Lee Palmer. Creditor Ervin Palmer also moved to Tuscaloosa and lived with the debtor and his wife for eight months.

Creditor's Exhibit 2 showed that the debtor was appointed administrator of his sister's estate. Additionally, Creditor's Exhibit 7 showed Ervin Palmer had granted a durable power of attorney to his uncle, Earnest L. Palmer. There is no copy of the power of attorney itself in the record, and no evidence that Ervin Palmer was not legally competent to handle his own business when he executed it.

The debtor, as administrator of his sister's estate, brought a wrongful death action based on the fatal accident. See Ala. Code § 6-5-410[2]. The suit produced a settlement netting

---

[2] **Ala. Code § 6-5-410** provides the following:

(a) A personal representative may commence an action and recover such damages as the

2

$71,481.88. (Creditor's Exhibit 6) It is undisputed that the debtor received the $71,481.88 wrongful death recovery.

In addition to the suit proceeds, it is also undisputed that, on January 30, 2002, the debtor received possession of an $11,697.52 State of Alabama Retirement System check payable directly to Ervin T. Palmer. Creditor's Exhibit 7 indicated that Ervin Palmer received the payment as a beneficiary.

These contested matters in bankruptcy reflect a continuing dispute between the debtor and his nephew about the debtor's use of the settlement and state retirement benefits.

Earnest Lee Palmer testified he spent all of the funds for Ervin Palmer's benefit. Ervin Palmer contended that he received no benefit from the money. It is undisputed that all the money was, indeed, spent.

Ervin Palmer initially testified that he received none of the approximate $83,180.00 held by his uncle, and received no benefit from its use. However, he later testified that he only received approximately $500.00 to $600.00 from his uncle. Evidence was that approximately

---

jury may assess in a court of competent jurisdiction within the State of Alabama, and not elsewhere, for the wrongful act, omission, or negligence of any person, persons, or corporation, his or their servants or agents, whereby the death of his testator or intestate was caused, provided the testator or intestate could have commenced an action for such wrongful act, omission, or negligence if it had not caused death.

(b) Such action shall not abate by the death of the defendant, but may be revived against his personal representative and may be maintained though there has not been prosecution, conviction or acquittal of the defendant for the wrongful act, omission, or negligence.

(c) <u>The damages recovered are not subject to the payment of the debts or liabilities of the testator or intestate, but must be distributed according to the statute of distributions.</u>

(d) Such action must be commenced within two years from and after the death of the testator or intestate.(emphasis added)

3

$20,000.00 to $25,000.00 went to Bradford Treatment Center where Ervin Palmer was treated for alcohol abuse. Ervin Palmer denied that this was a proper use of his funds. Approximately $8,500.00 was also spent for the funeral expenses the creditor's mother, Freddie Mae Palmer. Ervin Palmer disputed the appropriateness of this use of his money, as well as for payment of other expenses for his late mother. The most questionable expenditure by Earnest Lee Palmer came for the care of Ophelia Palmer, the debtor's mother and the creditor's grandmother. Plaintiff's Exhibit 2 showed that expense to be either $8,700.00 or $11,100.00. (Exhibit 2 is unclear as to the total amount.) The debtor testified that while his mother, Ophelia Palmer; and his nephew were both living with Earnest Lee Palmer and his wife, personal conflicts arose in the household. The situation made it necessary for either Ophelia Palmer or Ervin Palmer to move out. Earnest Lee Palmer elected to move his mother to a nursing home, and to allow Ervin Palmer to continue living in his home. Ervin Palmer's funds were used for the nursing home expenses, and allegedly for other care for Ophelia Palmer. Ervin Palmer disputed the appropriateness of this choice and contended he had worked and paid rent while he lived in his uncle's home. The debtor Earnest Palmer denied that this was true.

Neither party's testimony specified whether the allegedly improper spending of funds arose under color of the debtor's power as administrator of the estate of Freddie Mae Palmer, or under the power of attorney granted by Ervin Palmer. Creditor's Exhibit 2 is the debtor's (as estate administrator's) report of settlement and a petition for a hearing on the report before the Jefferson County Probate Court. There is no copy in the record of any final order by the Probate Court after the request for a settlement hearing. The report noted receipt of the $71,481.88 wrongful death recovery. The report contained no listing for the retirement system check

4

which was directly payable to Ervin T. Palmer.

Ervin Palmer testified that the power of attorney he had granted to the debtor was revoked, but it is unclear when this occurred. Creditor's Exhibit 2 itemized disbursements by the administrator beginning January 14, 1992 and ending October 13, 1993. This report reflected the receipt of the $71,481.88, and detailed disbursements totaling $57,145.41. The administrator reported a zero balance in the estate as of the request for settlement hearing.

Testimony showed that the creditor subsequently sued the debtor in Jefferson County Circuit Court for what was described as a breach of fiduciary duties. However, there is no copy of the complaint in this record. Subsequently, a default judgment was entered against Earnest Lee Palmer. The record does not contain a copy of the judgment order in favor of Ervin Palmer and there was no evidence indicating whether or not the debtor had participated in the litigation process leading to the order.

The debtor filed his bankruptcy petition on August 19, 2004, including his original Chapter 13 Plan Summary. (Bk Doc. 2) In this first plan, the debtor proposed to pay unsecured creditors a total of $3,544.00. Earnest Lee Palmer listed the judgment debt to Ervin Palmer in his schedules.

That same day (August 19, 2004), Earnest Lee Palmer also filed a motion to avoid Ervin Palmer's judicial lien, and to value the debtor's residential real estate.[3] (Bk Doc. 5) The

---

[3] Debtors typically file valuation motions under 11 U.S.C. § 506 to reduce the amount of secured debt a Chapter 13 plan must provide for. Section 506(a) states the following:

> (a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim

5

creditor filed Proof of Claim 3 in the amount of $264,104.21; and on September 19, 2004, an objection to the debtor's motion to avoid his judgment lien (Bk Doc. 16). By the claims bar date a total of approximately $697,649.00 in claims had been filed, which includes Ervin Palmer's $264,104.21 claim, and IRS claim of $239,400.00, and mortgage claims totaling $192,642.36.

After the first meeting of creditors, the debtor filed an amended plan on October 7, 2004 (Bk Doc. 18). The amended plan provided for the same $3,544.00 pro-rata distribution to unsecured creditors, but provided for Ameriquest Mortgage, first mortgagee on the debtor's residence, to be paid directly by the debtor. The hearing on the debtor's motion to value and to avoid the judicial lien, originally set for October 19, 2004, was continued to November 9, 2004, along with confirmation of the amended plan.

October 31, 2004, Ervin Palmer again objected to the debtor's motion to avoid his judicial lien and for valuation of the residence, filing exhibits on that day, and on November 4, 2004. (Bk Docs. 24, 25 and 26) Creditor's objection alleged that Earnest Lee Palmer had failed to disclose all of his assets, creditors, and income, as required by the Bankruptcy Code.

The confirmation hearing and motion to avoid lien and value real estate were continued from November 9, 2004 to December 21, 2004. November 15, 2004 the debtor filed an amendment to his schedules (Bk Doc. 28) adding the U.S. Internal Revenue Service (IRS) as a creditor. All matters were continued from the December 21, 2004 date to January 13, 2005.

---

to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. ...

Under 11 U.S.C. § 541, the "estate's interest" is defined by the debtor's property interests as of the petition date. Secured claims are paid as a higher distribution priority in Chapter 13 than general unsecured claims. Unsecured creditors often receive only a small percentage of what they were owed.

6

The debtor failed to appear at the January 13, 2005 hearing. The court then entered an order denying confirmation of the Earnest Lee Palmer's plan and granting him until January 20, 2005 to file an amended plan. (Bk Doc. 35) In the absence of the debtor, the order also sustained Ervin Palmer's and the Chapter 13 trustee's objections to confirmation, and denied the debtor's motion to value and to avoid judicial lien.

January 19, 2005, the debtor filed his motion to set aside the court's order denying avoidance of the lien and valuation of the real estate. (Bk Doc. 37) That same date, the creditor filed a motion to dismiss the bankruptcy case, and to bar debtor from refiling another bankruptcy case. (Bk Doc. 39)

The next day, January 20, 2005, Earnest Lee Palmer filed his last amended plan. (Bk Doc. 40) Debtor's second amended plan proposed the same distribution to unsecured creditors as the first two plans. He again proposed to pay Ameriquest Mortgage directly on its first mortgage on his residence. The plan further proposed to pay R.D. Drake, who held the second mortgage on the residence, $1,451.12 in arrears through the plan, with the debtor to pay current payments directly. The debtor's plan also proposed to pay the IRS $78.04 per month on the priority portion of its tax claim.

All matters were set for hearing March 1, 2005; and were again continued to March 15, 2005. March 1, 2005 the debtor amended his Schedule J expenses. (Bk Doc. 47)

Testimony began in these matters March 15, 2005 and concluded April 6, 2005.

The debtor and his non-filing wife own their home in Tuscaloosa County, Alabama. The evidence was that tax authorities appraised it at $170,000, but that its current market value was $190,000.00. Ameriquest Mortgage's first mortgage had a payoff balance of $201,133.26,

7

Case 04-72563-CMS13   Doc 65   Filed 09/16/05   Entered 09/16/05 14:55:40   Desc Main
Document      Page 7 of 17

while Drake's payoff balance on the second mortgage was $2,825.69. The debtor owns no other real estate individually.

The debtor is employed by Cornerstone Church and Cornerstone, Inc. The church, a nonprofit corporation, owns its building and the four acres it stands on. While the debtor is a guarantor on the mortgage, he owns no interest in the real estate. Debtor's Schedule B also listed various items of personal property, including stock in Earnest L. Palmer Ministries, Inc., another nonprofit corporation established by the debtor. There was no evidence of any value in this corporation and no evidence that the debtor has or will derive any income from this corporation.

A certain amount of testimony concerned a Rolls Royce automobile. The evidence was that this automobile is owned by Cornerstone, Inc., which paid approximately $25,000.00 for it three years ago. As minister at Cornerstone Baptist Church, the debtor once had the use of this vehicle; but, apparently, it has been in a repair shop since April 2004. There was no evidence showing that Earnest Lee Palmer had an ownership interest in the car as an individual.

The court took all these matters under submission for a decision after the close of evidence on April 6, 2005.

## CONCLUSIONS OF LAW

This court has jurisdiction of Earnest Lee Palmer's Chapter 13 case pursuant to 28 U.S.C. § 1334(a). The court has jurisdiction of these contested matters, core bankruptcy proceedings arising under the Bankruptcy Code, pursuant to 28 U.S.C. § 1334(b). The jurisdiction is referred to this court pursuant to 28 U.S.C. § 157(a), by the General Order of Reference of the United States District Courts for the Northern District of Alabama, Signed July 16, 1984, As Amended July 17, 1984.

8

Ervin Palmer's motion to dismiss this Chapter 13 case, and other accusations of misconduct against his uncle, appear to be continued efforts to collect on a judgment debt entered in state court.

However, the underlying legal issue properly before this Bankruptcy Court is whether Earnest Lee Palmer's plan, as amended, is confirmable under the Bankruptcy Code. If the plan is not confirmable, the case is due to be dismissed and all bankruptcy issues are mooted. However, if the debtor has proposed a legally confirmable plan, the court must deny Ervin Palmer's motions, and confirm the plan.

That is a federal question under the Bankruptcy Code, albeit an extremely fact-sensitive one, fleshed out by state law. The court must ultimately determine whether the debtor's plan was proposed in "good faith" as required by 11 U.S.C. §1325(a)(3).

## I.

### The creditor's allegations seek to show that the plan has not been proposed in "good faith."

11 U.S.C. § 1325 sets out the requirements for confirmation of a Chapter 13 case. Based on the evidence and the record, the only plan requirement conceivably challenged by these objections is the "good faith" requirement of § 1325(a)(3).[4] It states:

(a) Except as provided in subsection (b), the court <u>shall confirm</u> a plan if–

> ... (3) <u>the plan has been proposed in good faith</u> and not by any means forbidden by law; ... (emphasis added)

---

[4] The debtor's documents and testimony at hearing show that all other § 1325(a) requirements have been met, including the liquidation test of § 1325(a)(4). The creditor offered no credible evidence to the contrary.

9

Ervin Palmer's allegations, or objections, have placed this issue before the court. § 1325(b)(1) provides that if an unsecured creditor objects to confirmation, the court "may not approve" the plan unless the objecting creditor is either paid the full amount of his claim (§ 1325(b)(1)(A)); or, alternatively:

> ... (B) the plan provides that all of the debtor's projected income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

Since the debtor does not propose to pay Ervin Palmer the full amount of his claim, Subsection 1325(b)(1)(B) applies. § 1325(b)(2) defines "disposable income" as income "not reasonably necessary" for living expenses.

The evidence was that the debtor has disclosed all of his income and the income of his non-filing wife. There was no evidence of any other income coming into the household. There was no evidence that the expenses in the amended Schedule J were incorrect or inflated. The debtor has proposed to pay all of his disposable income to the Chapter 13 trustee for a full 60 months, and there is no proof to the contrary. There is no evidence that the debtor owns any property, either real or personal, not revealed in his petition.

Consequently, the court finds that the plan must be confirmed unless the debtor's plan is not proposed in good faith in the meaning of § 1325(a)(3).

**II.**

**The evidentiary record in this case does not reveal the kind of egregious bad conduct which would bar confirmation under Section 1325(a)(3).**

The Eleventh Circuit Court of Appeals long ago provided a guide for the factual

10

examination a court must make to answer the legal "good faith" issue.

The framework was set out in the venerable Kitchens v. Georgia Railroad Bank and Trust Company (In re Kitchens), 702 F.2d 885, 88-89 (11th Cir. 1983). All of the "Kitchens factors" seek to isolate a pattern of conduct from which a court must deduce that a Chapter 13 petition was filed in bad faith. See also In re McGovern, 297 B.R. 650, 658 (S.D. Fla. 2003).

Whether or not this debt would be dischargeable in a Chapter 7 case is one of the "Kitchens factors" implicated in the Palmer case, but it is a circumstance courts have weighted heavily in the "good faith" analysis, particularly when an objection alleges fraud. The Eleventh Circuit court adopted this factor from a prior Eighth Circuit opinion:

> The Eighth Circuit court also added to the list (of factors) consideration of the type of debt to be discharged and whether such debt would be nondischargeable under chapter 7. In re Estus, 695 F.2d at 317. This point arose in the Eighth Circuit case because the debtors were seeking to discharge student loans which are not dischargeable under chapter 7, as well as loans from employee credit unions. This is yet another factor to which bankruptcy courts should be alert.

See Kitchens, 702 F.2d at 889.

Chapter 13 reorganization was designed by Congress to reward debtors who wished to repay at least part of their prepetition debt with a broader discharge than offered in Chapter 7 liquidation. The Chapter 13 "super discharge" has been whittled down by amendment since the Code was adopted in 1978, including making most student loan debts nondischargeable. See 11 U.S.C. § 1328(a)(2).

However, there is still a broader discharge for successful completion of a Chapter 13 plan, than following a Chapter 7 liquidation. Courts have considered the choice of Chapter 13 instead of Chapter 7 as an important indication of the debtor's state of mind or motives. Case law

11

shows it is particularly important when the objector is the sole or largest creditor listed, and the debt is a prepetition judgment debt for some species of fraud. See In re McGovern, 297 B.R. at 658-59; In re Goodwin, 2005 WL 1949632, * 2 (Bankr. M.D. Fla. 2005); In re Smith, 2005 WL 2030520, *4 (Bankr. W.D. Mo. 2005); and Handeen v. LeMaire (In re LeMaire), 898 F.2d 1346 (8th Cir. 1990).

**A. The state court order does not preclude this court from considering the nondischargeability issue.**

For example, debts created by acts of common law fraud under 11 U.S.C. § 523(a)(2); and by actions constituting " ...defalcation while acting in a fiduciary capacity" under § 523(a)(4) may still be discharged in Chapter 13, but are nondischargeable in Chapter 7. Irvin Palmer has, at the very least, accused his uncle of misuse of his funds, and described the default judgment as being for breach of fiduciary duty. However, he has offered no objective proof that this is true, beyond the bare default order entered by the state circuit court.

A default order is not automatically determinative of dischargeability in Bankruptcy Court. Neither Alabama nor federal rules of collateral estoppel would bar this court from considering the nature of the debt. In both fora, the issues must have been actually litigated between the parties before preclusion may apply. See Bush v. Balfour Beatty Bahamas, Limited (In re Bush), 62 F.3d 1319, 1323 (11th Cir. 1995); and Angus v. Wald (In re Wald) 208 B.R. 516, 529 (Bankr. N.D. Ala. 1997) (citing to Lott v. Toomey, 477 So.2d 316, 319 (Ala. 1985); Crowder v. Red Mountain Mining Co., 127 Ala. 254, 29 So. 847 (1900); and Barnett v. Pinkston, 238 Ala. 327, 191 So. 371 (1939)). So this court must analyze these transactions for "good faith" solely on the Bankruptcy Court record.

12

Both the § 523(a)(2) discharge exception for fraud; and the § 523(a)(4) exception for fiduciary fraud require a high degree of proof, even in Chapter 7.

**B. The debtor was not acting in a "fiduciary capacity" when he used Ervin Palmer's funds.**

Here, the debtor's dual capacity as estate administrator for Freddie Mae Palmer, and as holder of a power of attorney for Ervin Palmer has confused issues for both parties.

A successful nondischargeability action under § 523(a)(4) requires proof of both fraud or defalcation and that the debtor committed the fraud or defalcation while in a fiduciary capacity. The narrow definition of "fiduciary capacity" required by § 523(a)(4) presents a high hurdle for the objecting creditor. Courts have required that the disputed transaction be part of an "express," rather than equitable, trust, under the law of the forum state. See Quaif v. Johnson, 4 F.3d 950, 953 (11th Cir. 1993); Dominie v. Jones (In re Jones), 306 B.R. 352, 355 (Bankr. N.D. Ala. 2004); and Cardile Bros. Mushroom Pkg, Inc. v. McCue (In re McCue), 324 B.R. 389, 392 (Bankr. M.D. Fla. 2005). As stated in Houston v. Capps (In re Capps), 193 B.R. 955, 961 (Bankr. N.D. Ala. 1995):

> Generally speaking, "a trust is a confidence reposed in one person, by and for the benefit of another, with respect to property held by the former, for that other's benefit. Gordon v. Central Park Little Boys League, 270 Ala. 311, 316, 119 So. 2d 23, 27 (1960). The person in whom the confidence is reposed and who holds the title to the property is the trustee; and the person for whose benefit the property is so held by the trustee is the cestui que trust. Id.
>
> An express trust is created by the direct and positive act of a party. Phillips v. Phillips, 223 Ala. 475, 477, 136 So. 785 (Ala. 1931) It arises as a result of a manifestation of intention to create the trust relationship. Austin W. Scott, Abridgment of the Law of Trusts § 2.8 (1960). No express words are necessary if the intention to create the relationship is otherwise manifested. Gordon v. Central Park Little Boys League, 270 Ala. at 316, 119 So. 2d at 27. The intention to create the relationship may be inferred from the facts and circumstances of a particular case. Id. "An express trust may be created even though the parties do not call it a trust, and even though they do not

13

understand precisely what a trust is; it is sufficient if what they appear to have in mind is in its essentials what the courts mean when they speak of a trust." Scott, supra, at 26.

The court's analysis of the Palmer facts indicates that Ervin Palmer has failed to prove that Earnest Lee Palmer's disputed use of the creditor's funds occurred when the debtor was "acting in a fiduciary capacity."

The creditor's arguments did not specify whether the alleged misconduct occurred in the debtor's capacity as administrator of Freddie Mae Palmer's estate; or in use of the durable power of attorney Ervin Palmer granted. An administrator would have fiduciary duties to distribute property of a decedent's estate to beneficiaries as required by state law. Diversion of estate property from those beneficiaries under the law would comprise fiduciary misconduct under both bankruptcy and Alabama law because the legal relationship does comprise an express trust.

However, the disputed payments (the wrongful death settlement and the state retirement check) in this case were never property of the decedent's estate. Both payments were the direct property of the creditor, Ervin Palmer; rather than property of the estate of Freddie Mae Palmer.

Under Alabama's wrongful death statute, Ala. Code 6-5-410(c), a damage award is exempt from the debts and liabilities of the estate, and passes directly to beneficiaries. The same is true of the check to Ervin Palmer from the Retirement Systems. It was made out directly to Ervin T. Palmer, not to the Estate of Freddie Mae Palmer.

The only official capacity in which the debtor could receive and spend the funds was under the power of attorney. Under Alabama law, exercise of a durable power of attorney does not automatically create a fiduciary duty to the grantee. Longstanding case law has generally construed the relationship as one of agency.

14

When the grantor is legally competent to manage his own affairs, the relationship is one of agency only – the agent acts under the legal fiction that he is the grantor, not as a trustee for a beneficiary of the grantor. See Lamb v. Scott, 643 So. 2d 972, 974 (Ala. 1994). Alabama common law requires the person exercising a power of attorney do so for the benefit of the grantor and not to service his own individual interest; and that use of the agency granted in the power of attorney not exceed those "expressly conferred".

As stated in Seeberg v. Norville, 204 Ala. 20, 85 So. 505 (Ala. 1920):

> It is the unquestionable duty of an agent to act in matters touching the agency with due regard to the interest of his principal. In accepting the agency, he impliedly undertakes to give his principal his best care and judgment, and to use the power conferred upon him for the sole benefit of his principal consistent with the purpose of the agency.

State courts have, at times, inferred a breach of a legal duty in egregious self-serving transactions exceeding the express powers granted by the power of attorney. In those cases, the overall factual circumstances of the conduct have constituted a breach of an "express trust" sufficient to void the transaction. See Seeberg v. Norville, 204 Ala. 20, 85 So. 505, (Ala. 1920); Lamb v. Scott, 643 So. 2d at 973-74; and Barron v. Scroggins, 2005 WL 736748 (Ala. Civ. App. 2005). See also Johnson v. Thompson (In re Thompson), 234 B.R. 820, 822 (Bankr. M.D. Ala. 1998), (court deduced Section 523(4)(a) nondischargeability where factual circumstances created an "express trust") and Dominie v. Jones (In re Jones), 306 B.R. 352 (Bankr. N.D. Ala. 2004) (court could not deduce a Section 523(a)(4) "express trust" from facts).

Ervin Palmer has failed to establish what powers the durable power of attorney "expressly conferred" on Earnest Lee Palmer since no copy nor any testimony stated the terms to the court. It is undisputed that the debtor did use the money, presumably under the durable power of

15

attorney, but the record facts do not indicate misuse of his agency, much less conduct reaching the level of fiduciary fraud under §523(a)(4). The obligation could not be excepted from discharge in Chapter 7 under §523(a)(4).

**C. Ervin Palmer has failed to show the judgment debt was created by a fraudulent transaction in the meaning of §523(a)(2).**

In the Eleventh Circuit, courts have generally held that creditors objecting under §523(a)(2) must prove the elements of common law fraud by a preponderance of the evidence. Those elements include evidence that the debtor made a false representation in order to deceive the creditor, that the creditor justifiably relied on the falsehood, and that the creditor suffered damages as a result of the fraud. See <u>Securities and Exchange Commission v. Bilzerian</u> (<u>In re Bilzerian</u>), 153 F.3d 1278, 1281-82 (11th Cir. 1998).

First, it is not clear from the evidence exactly what Ervin Palmer alleges Earnest Lee Palmer's misrepresentation to be. Second, the record contains no direct evidence proving, or circumstantial evidence from which a court could deduce, the debtor's intent to defraud in any representation. Consequently, the Ervin Palmer case, as presented, could not win a §523(a)(2) action in Chapter 7.

Consequently, the court cannot deduce from this record that the judgment debt Ervin Palmer holds against the debtor Earnest Lee Palmer was due to fraudulent conduct on the debtor's part, much less fraudulent conduct in the course of a fiduciary relationship.
Based on this record, the debt would be a dischargeable debt in both Chapter 13 and Chapter 7.

The court cannot deduce bad faith from the debtor's choice of a Chapter 13 reorganization over a Chapter 7 liquidation since creditor Ervin Palmer's situation is no worse in Chapter 13

16

than it would be in Chapter 7.

Since there is no evidence rebutting the plan's assertion that it complies with §1325(a), including §1325(a)(3), the plan must be confirmed.

## CONCLUSION

Since Earnest Lee Palmer's proposed Chapter 13 plan meets all the requirements for confirmation under the Bankruptcy Code, the court must **CONFIRM** the plan as proposed. Creditor Ervin Palmer's motion to dismiss the bankruptcy case is **DENIED** and his objection to the confirmation of the plan is **OVERRULED**.

The undisputed evidence shows that the value of the debtor Earnest Lee Palmer's home is $190,000.00 and further that it is subject to a first mortgage in the approximate amount of $201,133.00 and a second mortgage in the approximate amount of $2,825.00, and therefore there is no equity to which the judgment lien of Ervin Palmer can attach. The debtor's motion to avoid this lien is therefore due to be **GRANTED** pursuant to 11 U.S.C. §522(f)(1)(A).

The court will enter a separate order consistent with these findings pursuant to Fed. R. Bankr. P. 7052.

**DONE and ORDERED** this September 16, 2005.

/s/ C. Michael Stilson
C. Michael Stilson
United States Bankruptcy Judge